IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

KENNETH SCOTT,

    Plaintiff,

vs.                                   CASE NO. CV-00-J-1865-S

KING WHOLESALE SUPPLY
COMPANY, INC.,

    Defendant.

## MEMORANDUM OPINION

Currently pending before the court is the defendant's motion for summary judgment (doc. 28), evidence in support of said motion and a memorandum of law. The plaintiff submitted an opposition thereto (doc. 37) and filed evidence in support of his opposition (doc. 38) to which the defendant has submitted a reply.

Plaintiff commenced this action by filing a complaint alleging the defendant discriminated against him on the basis of race (black) in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, ("Title VII") and 42 U.S.C. § 1981.[1] Upon consideration of the pleadings, memoranda of the parties and evidentiary submissions received, the court concludes that the motion for summary judgment is due to be granted as no genuine issues of material fact remain and the defendant is entitled to judgment in its favor as a matter of law.

---

[1] Plaintiff has abandoned his 42 U.S.C. § 1981 allegations as they are not addressed in his response to defendant's motion for summary judgment.

## FACTUAL BACKGROUND

The plaintiff began working for defendant in 1995 when he was hired as a helper by Branch Manager Robert Freedman. Plaintiff depo. at 201-202; 205-206, 208; Freedman depo. at 70. Plaintiff was promoted to a truck driver and then, in February, 1997, promoted to warehouse manager by Freedman. Plaintiff depo. at 212-213, 217, 220; Freedman depo. at 236. The previous warehouse manager was also a black man.[2] Plaintiff depo. at 210. At least one white employee had wanted the warehouse manager position at the time plaintiff received this promotion. *Id.* at 220-221.

The plaintiff testified he had expressed interest in being a salesman to Freeman, but had no knowledge of the date when he did this or what he said. Plaintiff depo. at 225-226. He does not remember what he was told by Freedman. *Id.* at 226-227. He also does not remember if he was working as a driver, warehouse manager, or helper at the time he inquired about sales positions. *Id.* at 230.

The plaintiff asserts that Freedman harassed him and used racial slurs in his presence Complaint at ¶¶ 8-9. The plaintiff was terminated in October, 1999. *Id.* at ¶ 12.

The plaintiff's duties as warehouse manager included assisting the drivers and helpers to check their trucks before leaving. Plaintiff depo. at 242. The plaintiff stated he was verbally reprimanded for warehouse workers putting the wrong material in trucks by

---

[2] At the time, the plaintiff was actually the second warehouse manager since defendant opened its business. Freedman depo. at 235. The individual who replaced the plaintiff in this position was also black. *Id.*

Freedman. *Id.* at 241, 242, 251, 266, 267. Apparently Freedman ended up checking the trucks himself. *Id.* at 267. The plaintiff did write up his employees for loading the wrong material. *Id.* at 285.

Plaintiff alleges that Freeman yelled at him, as did the warehouse workers and truck drivers.[3] Plaintiff depo. at 16. Most of the warehouse workers and truck drivers who yelled at him were also black. *Id.* at 17. The plaintiff states that " I love Bobby. He gave me a job."[4] *Id.* at 268. The plaintiff asserts that he called Clay Geary, one of Freedman's supervisors, on one occasion, to tell him he wanted to work in a hostile-free environment because he was tired of being "screamed and cursed at." *Id.* at 269. The plaintiff did not tell Geary he believed his treatment was race related. *Id.* at 272.

The plaintiff received one written reprimand, but did not recall why he received it. *Id.* at 243. *See also* Exhibit 3 to plaintiff depo. entitled "Employee Warning Record." On two occasions, the plaintiff told Freedman "if you want to fire me, fire me." Plaintiff depo. at 248-249. *See also* Exhibit 3 to plaintiff depo. Freedman did not fire him either time. Plaintiff depo. at 249. The plaintiff did recall Freedman counseling him concerning his attitude. *Id.* at 265-266.

The plaintiff first filed an EEOC complaint against the defendant on October 21, 1998. Plaintiff depo. at 244-245, 291; defendant's Exhibit 2. On that occasion, the plaintiff

---

[3]Freedman testified that he yelled at everyone, but believed he yelled at the plaintiff the most. Freedman depo. at 204-205. This was due to the plaintiff yelling at him. Freedman depo. at 262.

[4]"Bobby" is Robert Freedman.

3

has been sent home (with pay) for an incident in which Freedman yelled at him for not getting Sheetrock delivered to a customer. The plaintiff talked back to him, possibly in a raised voice. Plaintiff depo. at 246-247, 292. The plaintiff testified "things quieted down a lot" and he told the EEOC to "leave that alone right now," although he never tried to withdraw this charge. *Id.* at 283.

The day before the plaintiff was terminated, no warehouse workers showed up for work. Plaintiff depo. at 260. The plaintiff was loading trucks and getting instructions from salesmen. *Id.* at 260-261. Freedman stated that the plaintiff loaded a truck wrong. Freedman depo. at 92. The plaintiff said he was too busy to get on the phone to find someone to help him, but he eventually did so. Plaintiff depo. at 261. A customer reported to Freedman that while he was in the warehouse, the plaintiff stated "he wasn't the 'N' word on a Louisiana slave plantation." Freedman depo. at 93. Freedman tried to talk to the plaintiff about this, but the plaintiff stated he did not do this, he had too much work to do, and argued with Freedman. *Id.* at 94-95.

While the plaintiff was handling all this work, Starkey McFarland and Rich Gadjos came into the warehouse to ask plaintiff about some material. Plaintiff depo. at 262-263. The day before that, three people had told plaintiff that Starkey was going through plaintiff's desk looking for his Xanax, so the plaintiff asked him about it. Plaintiff stated "some words got passed and he walked toward me, and as he was walking toward me, Rich jumped in the middle of us and he got so close to me I stuck my hand out and just moved him out of the way." *Id.* at 262. He stuck both hands out but cannot remember if they landed on Gadjos

4

chest or side. *Id.* at 262-263. Then all three of them walked away, and the plaintiff kneeled down and prayed. *Id.* at 263-264. Freedman asked the plaintiff what happened. *Id.* at 264. The plaintiff knows the employee handbook states an employee can be written-up or terminated for fighting on defendant's property. *Id.* at 236-237.

The plaintiff stated that one of his claims of discrimination stemmed from being told no blacks could bring guns on the defendant's property. Plaintiff depo. at 273-274. The plaintiff never brought a gun to the property, but states that Robert Glenn did, and that Starkey McFarland was trying to sell guns. *Id.* at 273-274, 290. In his opinion, Freedman knew about these incidents.[5] *Id.* at 275. The plaintiff also asserts as evidence of discrimination that if any employee under him was late, he was to write them up and put it in the file cabinet. *Id.* at 276-277, 278, 285. The plaintiff was never disciplined for being late. *Id.* at 277, 295. The plaintiff also wrote up his employees for refusing to do what he told them to and for threatening him. *Id.* at 285.

Plaintiff states for his next evidence of discrimination that tickets were computed wrong on the computer and then given to him, which caused the trucks to be loaded wrong. Plaintiff depo. at 278. The plaintiff was reprimanded for the trucks being wrong, but never saw anyone reprimanded for getting the tickets wrong. *Id.* at 278-279.

---

[5]Freedman agreed that Starkey McFarland, on one occasion, brought a gun which was old, non-working, and unloaded, to show to a vender of defendant who wanted to start a gun collection. Freedman depo. at 136. Freedman told McFarland to put it in his car, take it home, and never bring it back. *Id.* at 136.

5

The plaintiff alleged in his October 1999 EEOC charge that Freedman used a racial slur, but testified "I don't -- I didn't actually -- he didn't actually come face-to-face with me. I just heard it up under his tongue." Plaintiff depo. at 298. Plaintiff was unable to identify what this racial slur may have been, although he did state that Freedman put a sign over his door concerning gazelles in Africa having to run for their lives. *Id.* at 298-299. Plaintiff found this to be offensive because of the word "Africa" and having to "run for your life." *Id.* at 300. The plaintiff also alleged that he heard the "N" word used, but does not know who said it. *Id.* at 301. The plaintiff asserts he was called derogatory names by white customers too, and reported this to Freedman, who was understanding and stated he did not like doing business like that. *Id.* at 303-304. Additionally, other black employees and black customers used the "N" words and Freedman did not like it. *Id.* at 419.

The plaintiff also states in the October, 1999, EEOC charge, that he was fired without reason. Defendant's Exhibit 7. When asked at his deposition, the plaintiff stated Freedman told him he was not getting along with the office area, was not getting along with anybody, and was fired. Plaintiff depo. at 320-321. In his November, 1999, amended charge, the plaintiff alleged that defendant engaged in racially discriminatory hiring and promotional activities. When questioned about this, the plaintiff stated that a transfer driver told him that he did not see any black branch managers in any of the five branches. *Id.* at 322. He has no evidence to support this. *Id.* He stated he wanted to be a salesman and thought it was unfair that others were hired for this job when he was not, but never submitted a resume or anything in writing for the position. *Id.* at 323. The plaintiff also stated that a man named Tony

wanted to be a salesman but never filled out an application for it because "they" would not let him. *Id.* at 324-325. The plaintiff does not know who told Tony this. *Id.* at 325. Plaintiff did not know Tony's last name, but did mention one other person who wanted to be a salesman, Clarence Jackson. Plaintiff wrote-up Jackson three or four times and did not know if he had any sales experience. *Id.* at 329-330.

The plaintiff also asserted he was harassed daily by his supervisor because of the first EEOC charge he filed, which harassment took the form of getting yelled at when customers complained that the wrong things were on the trucks. Plaintiff depo. at 333-334.

After his termination, the plaintiff applied for Unemployment Compensation benefits. After hearing, the plaintiff's benefits were denied. Plaintiff depo. 355, defendant's Exhibit 4. The hearing officer determined that the plaintiff was discharged from work for misconduct after previous warning, which disqualified him from receiving benefits. Defendant's Exhibit 4. The plaintiff ultimately appealed this decision to the Circuit Court of Jefferson County, Alabama. Defendant's Exhibit 6. The Circuit Court determined that the plaintiff was rightfully discharged from his employment for misconduct after prior warning and therefore was not entitled to benefits. Defendant's Exhibit 6 (Order of May 25, 2001, *Scott v. Alabama Department of Industrial Relations and King Wholesale Supply Co.*, CV2000-1002). Freedman testified that the plaintiff was frequently given verbal warnings. Freedman depo. at 259. *See also* plaintiff's Exhibit C (warning for not following directions to load a truck); Exhibit D (loading wrong material on truck); Exhibit D (for wanting to *send*

7

another employee home without pay for not following an order); Exhibit E (for going home early); and Exhibit F (for improperly loading a truck three times).

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. SH. Kress & Co.*, 398 U.S. 144, 157 (1970). The substantive law will identify which facts are material and which are irrelevant. *Anderson*, 477 U.S. at 248. All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249. The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-252.

## LEGAL ANALYSIS

### Race Discrimination

Plaintiff asserts that the above facts constitute race discrimination. The plaintiff does not specify whether his evidence is meant to constitute direct or circumstantial evidence of

discrimination, but as the court can find no direct evidence of discrimination, the court applies the analysis required for circumstantial evidence. This court must apply a three prong test fashioned by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973). *See also Texas Department of Community Affairs v. Burdine*, 450 U.S. 248; 252-253; 101 S.Ct. 1089, 1093-1094 (1981); *Busby v. City of Orlando*, 931 F.2d 764, 777 (11th Cir.1991). First, the plaintiff must establish a *prima facie* case of discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. at 1824. Establishment of a *prima facie* case creates a presumption that the employer unlawfully discriminated against the employee. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-1528 (11th Cir. 1997).

Assuming the employee meets this burden, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the alleged discriminatory employment action. *Harris v. Shelby County Board of Education*, 99 F.3d 1078, 1083 (11th Cir.1996). The defendant can feasiblely present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted. *Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946, 950 (11th Cir.1991), *cert. denied*, 502 U.S. 1058 (1992)(quoting *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590. 596 (11th Cir.1987).

Once a defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination drops from the case. *Burdine*, 450 U.S. at 255, 101 S.Ct. at 1094 and n. 10. The plaintiff must then demonstrate by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but

rather a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825. The focus of the case after the defendant meets its burden of production is on the defendant's subjective intent and the motivation behind the defendant's adverse employment action directed at plaintiff. *Harris*, 99 F.3d at 1083.

The plaintiff meets his prima facie burden of proof by establishing that (1) he is a member of a protected class; (2) he was qualified for his job; (3) he was terminated; and (4) his employer treated similarly situated employees outside the protected classification more favorably. *Holifield v. Reno,* 115 F.3d 1555, 1562-63 (11th Cir.1997). The court has carefully read the plaintiff and the defendant's evidentiary submissions and can find no evidence (as opposed to legal argument) that any employee outside the protected class was treated more favorably than the plaintiff.

The plaintiff cannot show that he has been treated differently than non-minority employees. By his own testimony, he wrote-up employees under him for the exact same conduct for which he was written-up and eventually terminated. Also from his testimony, the court finds that the plaintiff yelled at other employees, for similar reasons he complains Freedman yelled at him.

As such, the court finds that the plaintiff has failed to make out a prima facie case of discrimination. This court need go no further in its analysis of the plaintiff's claim of race discrimination. This claim shall be dismissed by separate order of the court.

**Failure to Promote**[6]

The plaintiff states a claim that he was not promoted to a salesman position because of his race, in violation of Title VII. The plaintiff has offered no proof of such discrimination. In fact, this court cannot even find evidence to support plaintiff's allegation that a salesman position would be a promotion.

This court must apply the three prong test described above to "failure to promote" claims as well. The plaintiff meets his prima facie burden of proof by establishing that (1) he is a member of a protected class; (2) he was qualified for the position for which he applied; (3) he was not selected for the position; and (4) the selected individuals included non-protected class applicants. *McDonnell Douglas Corp.*, 411 U.S. at 804, 93 S.Ct. at 1824; *Walker v. Mortham,* 158 F.3d 1177, 1186 (11th Cir.1998). *See also Rabinovitz v. Pena*, 89 F.3d 482, 486-487 (7th Cir.1996). The plaintiff fails to get past step two of this four prong analysis as he cannot establish he was qualified for the position, nor that he ever applied for the position. At most, at some point in his employment with defendant, the plaintiff asked Freedman about salesman positions. No evidence of a position being available or plaintiff's applying for an available position has been submitted.

**Hostile Environment**

The plaintiff also asserts that he was subjected to a hostile environment. To establish a prima facie hostile environment claim, the plaintiff must show that the actions of the

---

[6]The court finds this claim is also barred as it has was never raised in an EEOC charge and the plaintiff specifies no time frame in which he was not promoted to a particular position.

defendant altered the condition of the workplace, creating an objectively abusive and hostile atmosphere. *Gupta v. Florida Board of Regents,* 212 F.3d 571, 582-83 (11th Cir.2000); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1521 (11th Cir.1995). If the workplace is permeated with "discriminatory intimidation, ridicule, and insult," that is sufficiently severe to "alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370-371, 126 L.Ed.2d 295 (1995). In *Edwards,* the court noted that for racial slurs of co-workers to create an "atmosphere charged with racial hostility" the comments must be "commonplace, overt and denigrating." *Edwards*, 49 F.3d at 1521.

In the facts before this court, the plaintiff cannot identify any racial comments that were made by a specific person. He believes someone he worked with may have made a derogatory comment. He does not allege that the comment in question was directed at him. This court finds that one or two possibly derogatory terms spoken by an unidentifiable person not directed at the plaintiff in approximately four years does not by any stretch of the imagination rise to the level of a hostile environment. The court also finds plaintiff's allegations concerning "Africa" and "gazelles" as evidence of a hostile environment to be ludicrous. This court will not find the names of continents or the animals thereon to constitute racially derogatory terms when used in the described context.

As the Eleventh Circuit has observed, Title VII was not meant to be a federal "civility code." *Mendoza v. Borden Inc.,* 195 F.3d 1238, 1245 (11th Cir.1999). In addition to the employee perceiving the harassment as sufficiently severe and pervasive to alter the terms

13

or conditions of his employment, his subjective perception must be objectively reasonable. The environment must be one that "a reasonable person would find hostile or abusive" and that "the victim ... subjectively perceive[s] ... to be abusive." *Mendoza*, 195 F.3d at 1246. This court finding the plaintiff's allegations to be objectively unreasonable, the court undertakes this analysis no further. Given the facts of this case, the evidence submitted and the allegations of the plaintiff, this court finds that the statements about which plaintiff complains simply do not rise to the level needed to create a genuine issue of material fact for trial.

**Retaliation**

The plaintiff further alleges he was treated more unfavorably after he filed his first EEOC complaint. To establish a prima facie case of retaliation for engaging in protected activity, the court must use the *McDonnell-Douglas* burden shifting standard, discussed in detail, *supra*. The plaintiff must show that he (1) engaged in Title VII protected activity; (2) an adverse employment action occurred; and (3) a causal connection between the protected activity and the adverse employment action exists. *Sullivan v. National Railroad Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir.1999); *see also Rabinovitz*, 89 F.3d at 488.

While the filing of an EEOC complaint is clearly a protected activity, the plaintiff cannot show an adverse employment action. Such action must be proven by a materially adverse change in the terms of employment, including, but not limited to significantly diminished responsibilities, demotion evidenced by a decrease in wage or salary, a less distinguished title, or loss of benefits. *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885-

886 (6th Cir.1996); *Rabinovitz*, 89 F.3d 488.  Here, the plaintiff has failed to establish any adverse change in the terms of his employment until a year later when he was terminated. Upon his termination, the plaintiff's position was filled by another black man.

Furthermore, the court notes that the plaintiff did not pursue the October, 1998 EEOC charge, in spite of the write-ups which may or may not have been from the time period immediately after the plaintiff filed this charge.  This court can find no causal connection between the plaintiff's unpursued 1998 EEOC charge and his termination a year later.

## CONCLUSION

The court having considered the foregoing, and finding that the plaintiff has failed to establish any genuine issue of material fact sufficient to allow this case to proceed to trial, the court **ORDERS** that the defendant's motion for summary judgment is hereby **GRANTED**.  The plaintiff's claims are **DISMISSED WITH PREJUDICE**.  Each party is to bear its own costs.

**DONE and ORDERED** this the 20 day of September, 2001.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE